Moses and others *against* Murgatroyd,
*Administrator, &c.*

An administrator, or trustee, who resists a claim, and litigates *bona fide*, from
a conviction of duty, and where no intentional default is made to appear,
will not, under the circumstances of the case, be charged *personally* with
the costs ; but they must be paid out of the assets of the intestate.

On a *rehearing* the court refused to alter the decree before given in the cause,
(see *ante*, p. 119.,) except as to the payment of costs by the administrator.

And the court refused to order the costs of the adminstrator of the mortga-
gor, on the sale of premises mortgaged *in fee*, to be paid out of the pro-
ceeds in this court.

ON a *rehearing* against the decree of the 29th of *August*
last, in this cause, (*ante*, p. 119.,) the objections to that
decree were, 1. Because it was decreed that the amount
of the moneys in the hands of *Charles Wilkes* be paid to
the plaintiffs, under their demand, founded on the assignment
of the 12th of *February*, 1806, mentioned in the pleadings ;
whereas those moneys arose out of the proceeds of the
cargo of the ship *Emperor*, under the two assignments of
the 20th of *December*, 1805, and the 12th of *February*,
1806.

2. Because it was decreed that the defendants should pay
costs.

It was, also, urged, on the rehearing, that the costs of the
administrator, relative to *Lawrence's* mortgage, ought first
to be paid out of the assets resulting from the mortgage, and
the residue only be distributed.

*T. A. Emmet* and *Wells*, for the defendants.

*Harison* and *Hoffman*, contra.

The Chancellor. It appears from the pleadings and
proofs, that *S. G. Ogden* made three assignments of pro-

Vol. I.                    3 O

1815.

MOSES
v.
MURGATROYD.

perty to *Samuel Murgatroyd.* The first assignment was on the 20th of *December*, 1805. That assignment has not been made an exhibit, or an object of proof, for the defendant seems not to have placed any reliance upon it as a matter of defence ; and, therefore, the precise terms of it do not appear. But, from the incidental notice taken of it in the cause, it appears to have been an assignment of a quantity of coffee on board the ship *Emperor*, and arising out of some old debt due to *Ogden* from the government of *Hayti*. This first assignment was not made by *Ogden*, nor accepted by *Murgatroyd*, as a special security for any particular debt ; but was intended as a general security for advances and responsibilities made or incurred by *Murgatroyd* on account of *Ogden*. The next assignment was made on the 20th of *February*, 1806 ; and though, like the former, it was general in its terms, yet it has been shown and decreed to have been made and accepted as a special security for *Murgatroyd's* endorsement of the notes stated in the bill. This assignment was of 100,000 pounds of coffee, or other goods of equal value, (or to the value of 20,000 dollars,) on board of the said ship, being the returns of the outward cargo. The third assignment was of the freight of the ship ; but as no part of that freight ever came to the possession of the assignee, it becomes of no consequence in the present case.

The ship, with her cargo, arrived at *New-York* ; and it has been ascertained, under an arbitration acceded to by the parties, that of the proceeds of that cargo, consisting of coffee, cotton, and sugar, the sum of 16,270 dollars and 50 cents came to the hands of the defendant, under the two assignments, without distinguishing whether those proceeds came to hand under the one or the other assignment, though it admitted that a considerable part of the coffee was to be placed to the account of the second assignment. After deducting from those proceeds the amount which had been paid on two of the notes mentioned in the

pleadings, the sum of 11,150 dollars and 50 cents was placed in the hands of Mr. *Wilkes,* to abide the decree in this suit.

Upon a consideration of the case, under all its circumstances, it appears to me that the administrator cannot be permitted to protect part of the coffee against the operation of the second assignment; and that the whole amount of the moneys in the hands of Mr. *Wilkes* was justly applied, by the decree, to the payment of the notes mentioned in the bill.

The amount of coffee claimed, in this case, falls short of the quantity specified in the second assignment; and it does not appear that the coffee, laden on board, had any distinguishing mark to designate from what particular source it arose; and the proceeds of it seem never to have been discriminated as belonging to different objects, either by the assignee or his administrator. The coffee must have been, originally, confounded in one entire parcel, and as yielding one entire sum, to be appropriated, generally, to the indemnity of the intestate, for his engagements on behalf of *Ogden.* This is the necessary conclusion to be drawn from the case, as the first assignment is not even made an exhibit in the cause; and the distinction now set up, on the rehearing, appears not to have been made by the intestate, nor relied on as a material point of defence by the defendant. The first assignment created no special trust in the intestate. It was made for his indemnity at large against existing and future advances and responsibilities for *Ogden;* and when the intestate accepted of a second assignment of coffee, on board of the same ship, to a precise amount, and to meet the demands of particular creditors of *Ogden,* a slight variation in the description of the source from whence the coffee proceeded seems not to be sufficient to justify the assignee in disregarding his trust. The safer and better rule is to preclude this recent pretension as dangerous to the fidelity and security of the trust; and which pretension the intestate, and

his representative, may be considered as having successively _waived_ by their own conduct. In construing the instruments, we are to look to the rights of the parties, as they stood when the second assignment was made and accepted. The two assignments were the acts of the same parties ; and as the second charged the intestate with a special trust, we ought, if possible, to give it full effect, and, if necessary, to make all the coffee on board subservient to that trust, to the specified amount, without inquiring how much proceeded from one source, and how much from another. That addition cannot well be considered, under the peculiar circumstances of this case, as an essential part of the description. The great object and substance of the contract was coffee to a certain amount. The intestate accepted, and assumed to apply to the discharge of particular debts, 100,000 pounds of coffee, or to the amount of 20,000 dollars ; and he ought not to be heard in his allegation, that he has coffee sufficient, but that he chooses to apply part of it to other purposes, according to his own discretion, because he can now undertake to show that part of his coffee was purchased from another source, or with other proceeds than those mentioned in the assignment. Admitting the fact to be so ; yet while no particular rights of third persons are concerned, (and none were when the second assignment was made,) the _specification of the quantity_ will control the residue of the description, and cover whatever coffee he may have had on board _to that amount._ Suppose there had been coffee enough on board, but all of it the result of the _Hayti_ debt, would the intestate have gone clear of his trust? That cannot be admitted. As the parties were competent to bind, by this second assignment, all the coffee on board, and as they intended to bind 100,000 pounds of it, the intestate must, on every sound construction, be answerable, under his trust, _for that quantity_ of his coffee on board, without being permitted to rest on the question, (immaterial in this case,) how, or with what property, he procured it. It lies not in his mouth to impair or defeat his trust, by

such a refinement, in his own favour; and, especially, ought he to be precluded, if no such discrimination was kept up from the time of the acceptance of the assignment, through all the stages of negotiation and dispute, down to the final hearing of the cause. And, if the second assignment will cover all the coffee on board, to the extent of the quantity specified, there can be no doubt that it limited and controlled the general terms of the first assignment, by designating the special purpose to which the cargo was, in the first instance, to be applied. The first assignment became subservient to the special trust, created and assumed by the second; and the assignee cannot be permitted to dissipate that trust, by setting up the general and prior assignment made for his own benefit at large.

Another objection to the decree is, that costs were awarded against the defendant, and this objection is much more embarrassing to me than the other. I feel the weight due to the consideration, that the defendant stands before the court as an administrator merely, not as a party to the original trust; and that the trust rested in parol proof, and did not appear on the face of the assignment, so that the defendant might not have considered himself as bound to regard any mere verbal information of it. As far as the assets of the intestate are concerned, they are justly chargeable with costs; but I feel reluctant in fixing upon the defendant a wilful or improper resistance to the claim set up in the bill. On the other hand, it appears that he had admitted the trust, and promised to pay the notes. What precise information he had to justify these admissions, does not appear. Perhaps, it was an admission inconsiderately made; and that he, afterwards, deemed it his duty, as trustee for all the creditors, to resist a claim inconsistent with the terms of the assignment. Shall an administrator make such resistance at his peril, and be charged with costs when no wilful or intentional default is made satisfactorily to appear; I am by no means persuaded that the defendant did not act according to

1815.

MOSES
v.
MURGATROYD.

what he deemed his duty, when he confessed the judgment, and when he defended this suit; and, unless I am so persuaded, it is, perhaps, the safer course to exempt an administrator, under all the circumstances of such a case as this, from being charged personally, or, in other words, punished with costs.

I am of opinion, then, that the decree, so far as it awards costs against the defendant personally, be corrected, and no further. I shall not direct that the costs of the administrator, before the surrogate and in this court, be first paid out of the equitable assets arising from *Lawrence's* mortgages. He voluntarily abandoned the surrogate's order, and I see no equity that entitles him to *aid* for those costs, or for costs arising in this court.

Decree accordingly.